## SYLVESTER *v.* THE STATE OF WASHINGTON.

ERROR TO THE SUPREME COURT OF THE STATE OF WASH-
INGTON.

No. 40.　Argued November 4, 5, 1909.—Decided November 15, 1909.

Where in the state court plaintiff in error set up the invalidity of a deed under the provisions of an act of Congress and judgment could not be rendered against him without sustaining the deed this court has jurisdiction under § 709, Rev. Stat. *Anderson* v. *Carkins*, 135 U. S. 483; *Nutt* v. *Knut*, 200 U. S. 12.

Where Congress appropriates for a Territory to erect buildings the implication is that the Territory must control the land on which the buildings are to be erected, and where land is cheap the implied authority will not be limited to merely leasing the land. *Quære* whether an organized Territory has not power to purchase land for a seat of government.

Under the Oregon Donation Act of September 27, 1850, c. 76, 9 Stat. 496, as amended July 17, 1854, c. 84, § 2, 10 Stat. 305, no condition except residence for four years was necessary to validate a sale by a settler before a patent.

On a writ of error where the rights of the parties depend upon the validity of a deed under an act of Congress this court is confined to the question of validity under the statute and the effect of the deed, if valid, upon the later rights and acquisitions of the grantor is a matter of local law; and, in this case, the court will not disturb the assumption of the state court that a settler giving a valid deed before patent perfected the title and obtained the patent on behalf of his grantee or else that the patent enured to the benefit of the grantee.

46 Washington, 585, affirmed.


THE facts are stated in the opinion.


*Mr. George Marvin Savage* for plaintiff in error:

The instrument under which defendant claims title was void because the purported grantors had nothing but a " squatter's right." Under the Oregon Donation Law neither legal nor equitable title vests in the settler before his full compliance with all the requirements of said act. *Hall* v. *Russell,* 101 U. S. 509; *Vance* v. *Burbank,* 101 U. S. 514; *Ore. & Cal. R. R. Co.* v. *United States,* 190 U. S. 195; *United States* v. *Ore. & Cal. R. Co.,* 133 Fed. Rep. 954; *Cutting* v. *Cutting,* 6 Fed. Rep. 262; *Henry* v. *Land Co.,* 83 Fed. Rep. 748; *Hershberger* v. *Blewett,* 55 Fed. Rep. 177; *Traver* v. *Tribou,* 15 Fed. Rep. 31.

The Oregon state courts now hold to the doctrine of full compliance being necessary, having overruled their former decisions in the recent case of *Quinn* v. *Ladd,* 37 Oregon, 261 (59 Pac. Rep. 459); *Bullene* v. *Garrison,* 1 Wash. Ter. 590; *Maynard* v. *Hill,* 1 Wash. Ter. 327; *McSorley* v. *Hill,* 27 Pac.

Rep. 554; *S. C.*, 2 Wash. Ter. 638; *Maynard* v. *Valentine*, 2 Wash. Ter. 18. The decisions of the Land Department also support contentions. *Allen Claim*, 7 L. D. 547; *Vetch* v. *Park*, 14 L. D. 490; *Varner Claim*, 22 L. D. 569; *Stone* v. *Connell Heirs*, 23 L. D. 166.

Under the act of July 26, 1894, mere residence for the required period is not sufficient. The settler must perfect his inchoate rights by conforming to all the requirements of the act. Congress, recognizing this, and desiring to protect dilatory settlers, on July 26, 1894, passed an act extending the time within which final proof could be made under the Oregon Donation Act, 28 Stat. 122, which has been construed to be intended for the relief of those who had resided continuously upon and cultivated the lands specified in the original donation notifications, but had through mistake or negligence omitted to make and file their final proofs and fully establish their rights to such donations. *Oregon & C. R. R. Co.* v. *United States*, 190 U. S. 195.

See circular of the Department of the Interior, April 8, 1895, 20 L. D. 290.

The rule that all the requirements of the granting provisions of the act must be complied with by the settler before title vests is not confined to the Oregon Donation Act. It is the uniform ruling of the courts upon the land laws. *McCune* v. *Essig*, 118 Fed. Rep. 280; aff'd 199 U. S. 388.

A homesteader has not legal title before final proof. *United States* v. *Turner*, 54 Fed. Rep. 228.

Decisions of United States courts control. Decisions of state courts are not binding in cases involving the validity of conveyances of the public lands of the United States, as the questions when title passed, and whether it passed, and to whom, depend on the laws of the United States. *McCune* v. *Essig*, 199 U. S. 390; *Anderson* v. *Carkins*, 135 U. S. 486; *Wilcox* v. *Jackson*, 13 Pet. 517; *Proebstel* v. *Hogue*, 15 Fed. Rep. 583; *Cunningham* v. *Krutz*, 83 Pac. Rep. 109; *S. C.*, 41 Wash 190.

The Territory was guilty of laches. Sylvester and wife continued to reside on his claim, after making the first deed, until after the patent; residence and cultivation were only necessary upon some part of the claim. *United States* v. *Tichenor*, 12 Fed. Rep. 426.

The Territory, with full knowledge, permitted him to prove up and establish his legal title to his full claim, and must be held to have waived any right beyond a mere possessory right, subordinate to his high title. *Hall* v. *Russell*, 101 U. S. 512.

The state court based its decision upon the cases of *Barney* v. *Dolph*, 97 U. S. 652; *Brazee* v. *Schofield*, 124 U. S. 495, and *Roeder* v. *Foux*, all of which can be distinguished from this case.

The deed was void because the grantee named therein was not authorized by law to take title to the land.

The Territory of Washington, having no attributes to sovereignty, had no power to acquire land. Its organic act gave no power to acquire title to land. It was not authorized or directed by act of Congress to purchase, or take title. The land was public land of the United States. The appropriation for public buildings did not give the Territory power to purchase land. *Koch* v. *Vanderhoff*, 9 Atl. Rep. 772; 19 Op. Atty. Genl. 34, 79; § 3736, Rev. Stat.; *United States* v. *Tichenor*, 12 Fed. Rep. 421.

*Mr. W. P. Bell*, Attorney General of the State of Washington, with whom *Mr. W. V. Tanner*, *Mr. W. F. Magill* and *Mr. George A. Lee* were on the brief, for defendant in error.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is an action brought by the heirs of one Edmund Sylvester to recover a parcel of land patented to him by the United States, under the Oregon Donation Act of September 27, 1850, c. 76, 9 Stat. 496, and the amendments to the same. The State took up the defense and alleged that Sylves-

ter settled on the land on February 1, 1850, resided there continuously for more than four years, and then with his wife, the plaintiff Clara Sylvester, by deed of bargain and sale without covenants, conveyed the land to the Territory of Washington on January 18, 1855. This conveyance was made in accordance with a Territorial Act of January 9, 1855, to provide for the seat of government. The State alleged that it and the Territory, its predecessor, have been in open and adverse possession ever since, and relied upon the statute of limitations as well as upon the deed. To this defense there is a very verbose reply to the following effect.

The grantor offered the land to the Territory as a gift so long as it should be used as a site for the seat of government and the territorial capitol building erected and maintained thereon. The offer was accepted and an act was passed establishing the seat of government there, provided the owners or claimants gave a release of the land. January 9, 1855. Thereupon Sylvester made the above mentioned deed, which the plaintiffs prefer to call a release—or a quitclaim, as it was called in another territorial act of a few days later, January 28, 1855, accepting the deed. At the time of Sylvester's conveyance he was a claimant, but had not complied with the requirements of the Donation Act in other respects than the occupation for more than four years. On this ground it is alleged that his deed was void. On July 1, 1858, he made final proof; there was no adverse claim, and on May 3, 1860, a patent was issued to him. He died in 1887, and after the State of Washington had been admitted to the Union, at its request, the plaintiffs executed another deed of the premises—but this deed purported to be made "upon the express condition that the tract shall be and remain the site of the capitol of Washington, and that in the event of the location of the capitol elsewhere than upon his tract, these presents shall be null and void." As a further ground of recovery, it is alleged that the State has ceased to use the tract for the seat of government. Finally, it is alleged that under the act of Congress of March 2, 1853, c. 90, 10 Stat.

172, organizing Washington Territory, the Territory was not authorized or permitted to acquire title to the land in suit. It is added that the statute of limitations did not run, because the plaintiffs could not sue the Territory or State until authorized to do so by the act of 1895, c. 95, p. 188, for the first time.

There was a trial and judgment for the State, which judgment was affirmed by the state Supreme Court. 46 Washington, 585. The facts found were substantially those set forth in the pleadings, except that it was held to be proved that Sylvester filed his notification of settlement with the Surveyor-General of Oregon in February, 1854, before the date of his deed to the Territory, although, as has been shown, his final proof and his receipt of a patent were after that date. The plaintiffs specially set up the invalidity of his deed under the Oregon Donation Act, and the incapacity of the Territory to accept it under the act by which it was organized and claimed title on these grounds. We may assume that the present writ of error is within the jurisdiction of this court. *Anderson* v. *Carkins,* 135 U. S. 483; *Nutt* v. *Knut,* 200 U. S. 12. But on the merits we are of opinion that the plaintiffs have no case.

We see no ground whatever for the doubt suggested as to the power of the Territory to accept the deed. If that power was not incident to the organization, it was implied by § 13 of the Organic Act, as Congress granted five thousand dollars ' for the erection of suitable buildings at the seat of government.' For that purpose it was necessary that the Territory should control the land, and especially in a region where land was so cheap as it was in those days the implied authority cannot be confined to the taking of a lease.

On the other point it was said that the settler acquired no rights until he not only had cultivated the land for four years, but had otherwise conformed to the provisions of the Oregon Donation Act. Section 4. Whereas, at least, he had not made final proof. *Oregon & California R. R.* v. *United States,* No. 3, 190 U. S. 186, 195. But the question in this case is not whether Sylvester had acquired rights that the Government could not

impair, or in fact preserved as against another claimant, as in *East Central Eureka Mining Co.* v. *Central Eureka Mining Co.*, 204 U. S. 266, 270, 271, but it is between his representatives and his grantee. That Sylvester had some rights cannot be disputed, and is recognized by § 8 of the act ("all the rights of the deceased"). He was in possession and had taken lawful steps toward getting the title. Those rights he could convey unless prohibited by law. But by the amending act of July 17, 1854, c. 84, § 2, 10 Stat. 305, the proviso in § 4 of the Donation Act making contracts for the sale of the lands before patent void was repealed, "*Provided*, That no sale shall be deemed valid, unless the vendor shall have resided four years upon the land." As this proviso attached no condition except residence for four years it would be more than a harsh construction to hold that the validity of the deed still depended upon the fulfillment of the other requirements for a perfect right. We are of opinion that the deed was valid, and thus the question is narrowed to the effect of the conveyance upon the title subsequently given to Sylvester by the patent of the United States. See *Brazee* v. *Schofield*, 124 U. S. 495.

But the questions that come before this court are confined to the rights of the parties under the statutes of the United States, and when it is decided that Sylvester's deed was valid under these statutes, its effect upon his later acts and acquisitions would seem to be a matter of local law. If the state court assumed, as it seems to have assumed, that Sylvester's subsequent making of final proof was to be taken to have been done on behalf of his grantee, and thus to have perfected its equitable right to the land, it is enough to say that we see no ground for disturbing the assumption. See *Nixon* v. *Carco*, 28 Mississippi, 414. If the state Supreme Court concurred with the trial court in holding an equitable title a sufficient answer to the plaintiff's claim, that is a matter with which we have nothing to do. Whether the decision went on this ground or assumed that the legal title also enured to the benefit of the State does not appear. If the latter ground were adopted we

presume that it could not be because of the form of the deed in the absence of words expressing or implying warranty, but would be peculiar to this class of cases. We suppose that, in the absence of a statute specially dealing with the matter, either the title would be taken to relate back, or it would be held that a permitted conveyance, before the Government has given a legal title to any one, made by a person in process of acquiring a title in the statutory method, would be taken to have contemplated that the grantor should have the benefit of what was done afterwards to perfect it. Those propositions we are not called upon to discuss. See *Landes* v. *Brant*, 10 How. 348; *United States* v. *Clark*, 200 U. S. 601, 607; Rev. Stat., § 2448.

Other matters were argued, as, for instance, whether parol evidence should have been received to show that the first deed was intended to be conditional, although absolute in form; the effect of the second deed and the condition that it expressed; the statute of limitations and so forth. But the only questions open, on the most liberal interpretation, are those that we have answered, and it follows without more that the judgment must be affirmed.

*Affirmed.*